Argued March 31; affirmed April 13, 1937

In re Union Savings and Loan Association

UNION BOND AND TRUST CO. *v.* GILBERT

(66 P. (2d) 997)

*Marvin S. W. Swire*, of Portland (Coan & Rosenberg, of Portland, on the brief), for appellant.

*Edward E. Sox*, of Albany, for respondent.

CAMPBELL, J. In the early part of 1934, Ina Gilbert, respondent herein, was the owner of 48 shares of the stock of the Union Savings and Loan Association of the par value of $3,190.38. The Union Savings and Loan Association became insolvent and was taken over by the corporation commissioner of the state of Oregon as statutory receiver. It appears that, in April of 1934, the Union Bond and Trust Company, appellant herein, procured an assignment of said shares of stock by paying the respondent the sum of $1 and agreeing to give her 50 per cent of all the money that might be realized on the stock in the liquidation of the assets of the Union Savings and Loan Association.

On September 11, 1934, the corporation commissioner filed a petition in the circuit court for Multnomah county setting forth that he was in doubt as to whom he should pay the dividends accruing upon shares of stock of said insolvent association and notified all those having conflicting claims to appear in court on a certain day and have their claims adjudicated. Among the stock so listed were the 48 shares belonging to respondent and assigned to appellant. On the day appointed, the parties hereto appeared in court. After

hearing, the circuit court, on September 18, 1934, made and entered the following order:

"This matter having come on regularly for hearing before the above entitled Court, the Corporation Commissioner, Charles H. Carey, as statutory receiver of Union Savings and Loan Association, appearing by his attorney, Edward Sox, the respondent, Ina Gilbert, appearing in person and by her attorney, R. A. Bennett, the respondent, Union Bond and Trust Company, appearing by its attorney, E. M. Morton, and by its vice-president, A. K. Wilson, and the Court having heard the evidence adduced on behalf of respondent, Ina Gilbert, whereupon the respondent, Union Bond and Trust Company, moved for a dismissal of the petition filed herein, the Court having duly considered the matter and denied the motion, and being now fully advised in the premises:

Now THEREFORE, IT IS ORDERED AND DECREED that the purported assignment and transfer of the following listed certificates in the Union Savings and Loan Association:

| No. 12484 | 20 Class C Shares | $2,000.00 |
| No. 8354 | 10 Class B Shares | 38.60 |
| No. 13976 | 10 Class C Shares | 1,000.00 |
| No. 11327 | 8 Class B Shares | 151.78 |

made on or about April 30th, 1934, by the said Ina Gilbert to Union Bond and Trust Company, is null and void and of no effect; and that Corporation Commissioner, Charles H. Carey, as statutory receiver of Union Savings and Loan Association, be and hereby is directed to disregard the said purported assignment, and to recognize the respondent, Ina Gilbert, as the true and lawful owner of the said certificates."

On November 12, 1934, fifty-five days after said decree was entered, the vice-president of appellant visited respondent at her home in Hermiston, and again on November 15 he visited her at the schoolhouse in

Umatilla where she was a teacher. As a result of these visits he obtained an agreement from respondent that she would assign to appellant a certificate of stock of the Union Savings and Loan Association, No. 13976, of the par value of $1,000, being one of the certificates involved in the decree above mentioned.

On April 15, 1936, the corporation commissioner again filed a petition in the circuit court for Multnomah county setting forth that he was in doubt as to who should receive the dividends accruing on the said $1,000 certificate and notified respondent and appellant to appear in that court and have the matter adjudicated.

To this petition respondent filed an answer alleging that the assignment of said certificate was obtained from her by fraud and misrepresentation in that the vice-president of appellant falsely represented to her that "she was not the owner of said certificate of stock", but that appellant was the owner; that the decree of the court, above mentioned, did not affect the ownership of the said certificate; that the judgment of the circuit court of Multnomah county would be appealed; that the judge who had rendered the decision has been reversed by the supreme court eight out of ten times in which appeals were taken from his judgments; that she had committed perjury in the trial court for which appellant had an action against her therefor. She further alleged that the said vice-president as representative of appellant made said statements, knowing that said statements were untrue and intending that respondent should act thereon; that said statements were untrue, but she believed them to be true and that she relied upon them; that they were the sole inducement for the making of the assignment.

The appellant in his reply made a general denial.

The cause came on for hearing before the Honorable Hall S. Lusk and after hearing all the testimony he made findings and decree in which he found the allegations of respondent's answer were sustained and made a decree decreeing her to be the owner of said certificate of stock and decreed that the corporation commissioner as statutory receiver for the Union Savings and Loan Association pay all dividends accruing on said shares of stock to the respondent. From that decree, the Union Bond and Trust Company appeals.

At the trial of the cause the appellant contended that said assignment of said stock was made in consideration of a compromise and settlement and a forbearance to appeal from the decree entered September 18, 1934.

The bill of exceptions shows two assignments of error: First, the court erred in not upholding the assignment agreement entered into between respondent and appellant on November 14, 1934, as a settlement and compromise agreement; and, second, the court erred in finding that said settlement and compromise agreement had been procured by fraud.

██ Agreements of compromise and settlement are favored by the law: *Holder v. Harris,* 121 Or. 432 (248 P. 145, 253 P. 869, 254 P. 1021); *Klussman v. Day,* 107 Or. 109 (213 P. 787, 214 P. 348), and the cases cited therein. But if such agreements are procured by fraud, they are the same as any other agreement so procured and will not be upheld. Fraud as the inducing cause vitiates an agreement: *Wells v. Neff,* 14 Or. 66 (12 P. 84); *Klussman v. Day,* supra; *Holder v. Harris,* supra; 5 R. C. L. 879. As before stated, there must be no taint of inequitable dealing, fraud or overreaching in arriving at the settlement.

■ In this case we have the vice-president of appellant, an experienced and able business man, trusted by respondent, an elderly teacher of the primary grades of school for a period of 17 years, rushing the respondent into signing an agreement by which appellant acquired stock of the par value of $1,000, and on which a 20 per cent dividend had already accrued, for the total cost of $1. And all of this after and in spite of the fact that a court of competent jurisdiction had decreed respondent to be the sole owner of the stock in question.

We are not impressed with the contention of appellant that the contract was signed in consideration of the appellant's forbearance to prosecute an appeal to the supreme court, nor with the evidence adduced in support thereof. In fact, the attorney, who was employed by appellant in the matter of the first petition, testified that he discouraged appellant to appeal and advised it against such a step. This agreement was entered into only a few days before the expiration of the time in which to file the notice of appeal.

The evidence adduced on behalf of respondent and some of that adduced on behalf of appellant amply sustain the findings of the trial court as to the allegations of fraud in respondent's answer. There is nothing in the circumstances surrounding the signing of the agreement that would impress a court of equity that the agreement was signed under "any ordinary mistake, either of law or fact" and that there was an absence of inequitable conduct. The evidence shows that the contract here sought to be enforced is unfair, inequitable, and shows a deliberate attempt on the part of appellant to overreach.

The fact that the agent of the appellant did not consult the advice of his own attorney, and also ignored

the fact that the respondent's attorney had an office and was doing business in the city of Portland at the time he made his journey to Eastern Oregon to prevail upon respondent to execute the contract, is sufficient to arouse suspicion that he intended to overreach the respondent. That is not the method that is ordinarily adopted by business men who wish to enter into a fair and equitable contract.

The decree of the circuit court will be affirmed. It is so ordered.

BEAN, C. J., and BAILEY and RAND, JJ., concur.